## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ben Kaeding,

               Plaintiff,

v.

Nancy A. Berryhill,[1] Acting Commissioner
of Social Security,

               Defendant.

Case No. 16-cv-889 (JRT/TNL)

**REPORT AND
RECOMMENDATION**

---

Jennifer G. Mrozik, Hoglund, Chwialkowski & Mrozik, PLLC, 1781 County Road B, Roseville, MN 55113 (for Plaintiff); and

Gregory G. Brooker, Acting United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendant).

---

## I.    INTRODUCTION

Plaintiff Ben Kaeding brings the present action, contesting Defendant Commissioner of Social Security's dismissal of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. This matter is before the undersigned United States Magistrate Judge on cross motions for summary judgment. These motions have been referred to the undersigned for a report and recommendation to the district court, the Honorable John R. Tunheim, Chief Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 7.2 and 72.1. Being duly advised of all the files, records, and proceedings

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as Defendant.

herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 9), be **DENIED** and Defendant's Motion for Summary Judgment, (ECF No. 12), be **GRANTED**.

## II.   FACTS

### A. Plaintiff's Application for Benefits

Plaintiff started the instant action by applying for DIB and SSI on April 15, 2011, alleging a disability onset date of September 15, 2009. (Tr. 227–30; *see* Tr. 256–66, 50–66, 70–88). In completing his application for DIB, Plaintiff "wore a device with headphones and a speaker so that he could hear." (Tr. 258). Plaintiff alleges impairments of: hearing loss in both ears; irregular heartbeat; remission skin cancer; high blood pressure; depression; broken bones in both feet; pain in both ankles; and cataracts in both eyes. (Tr. 261, 50, 70). Plaintiff was found to have the severe impairments of affective disorders and anxiety disorders, and the non-severe impairments of other disorders of the ear, sprains and strains, and other disorders of the respiratory system. (Tr. 60–61, 80). Plaintiff was found not disabled on February 7, 2012 for purposes of DIB, but disabled for SSI purposes. (Tr. 66, 87).

Plaintiff appointed David L. Christianson, an attorney, to act as his representative before the Social Security Administration on February 22, 2012. (Tr. 112–15). Plaintiff then sought reconsideration of his DIB claim. (Tr. 116; *see* Tr. 90–103). Plaintiff reported no change regarding his ailments. (Tr. 91). Plaintiff was found not disabled on reconsideration on May 4, 2012 for purposes of his DIB claim. (Tr. 103).

### B. Administrative Hearing and ALJ Decision

On December 10, 2013, Plaintiff sought a hearing by an administrative law judge. (Tr. 121–29). Plaintiff asserted "[n]o notice of Reconsideration Decision was given to either [Plaintiff] or rep[resentative] until December 9, 2013," thereby requesting an exception for late filing. (Tr. 121, 123, 139). Good cause was found to permit untimely filing. (Tr. 122).

On July 12, 2014, Plaintiff's request for hearing was "transferred to the National Hearing Center from the Minneapolis, MN Hearing Office." (Tr. 131–37). The National Hearing Center holds hearings "using video hearing technology." (Tr. 131). On August 20, 2014, Plaintiff was sent a Notice of Hearing, setting a video hearing for November 21, 2014. (Tr. 140–65).

On November 5, 2014, Plaintiff called the SSA's National Hearing Center to advise that "he objects to [a video hearing] because of hearing problems etc." (Tr. 309). Plaintiff also indicated that he "has not talked to rep in two reps [sic] and does not want a rep." (Tr. 309). Plaintiff was informed that "he needs to terminate with rep" and was provided his representative's contact information. (Tr. 309). That same day, Plaintiff faxed a letter to the SSA's National Hearing Center, indicating he "needed an in person hearing and [Communication Access Realtime Translation ("CART")] services because of [his] hearing disability." (Tr. 167). Plaintiff indicated he called Christianson and "got no answer but left a message." (Tr. 167). Plaintiff wrote that he was "not aware if [Christianson] is still involved" as he had "not talked to him in a long time." (Tr. 167). Plaintiff requested that, "because of [his] severe hearing disability," that an in-person

hearing be scheduled and CART caption services and transcripts be made available. (Tr. 167).

On February 19, 2015, Plaintiff was sent a Notice of Hearing, setting an in-person hearing for April 8, 2015. (Tr. 168–86).

On March 17, 2015, Plaintiff faxed a letter to the SSA Office of Disability Adjudication and Review in Minneapolis (hereinafter "Minneapolis ODAR") regarding the hearing scheduled for April 8, 2015. (Tr. 323). Plaintiff wrote

> to make sure that CART Services . . . are available for this hearing. In addition, I would like a copy of the electronic CART file at the conclusion of the Hearing and then have at least 7 days to respond in writing to what was said. I can provide a USB drive for this file.

(Tr. 323). Second, Plaintiff was "trying to find out what the issue is that is being addressed at this Hearing," indicating that he was already determined to be disabled so the purpose of the hearing was unclear. (Tr. 323). Plaintiff indicated he had "hearing loss and mental processing issues" so he wanted to "look at the file in advance." (Tr. 323).

On March 18, 2015, Plaintiff's representative was contacted by the Minneapolis ODAR indicating that it had "received another letter from [Plaintiff] indicating he wants CART services for his hearing." (Tr. 325). Christianson was asked to contact Plaintiff "and inform him that those services are not available through our office." (Tr. 325).

On March 25, 2015, Plaintiff was sent a Notice of Hearing-Important Reminder, reminding him of the April 8, 2015 hearing. (Tr. 189–93).

On March 30, 2015, Plaintiff returned the Acknowledgment of Receipt (Notice of Hearing), handwriting that he had "not received a response to [his] fax," requesting a copy of his file and a CART reporter. (Tr. 195).

On April 2, 2015, Minneapolis ODAR sent Plaintiff a letter indicating it had received his March 17, 2015 and March 30, 2015 correspondences "regarding CART services, copies of your file, the purpose of your hearing, and your consent for release of information." (Tr. 328). Minneapolis ODAR told Plaintiff that because he is "currently represented, we have contacted your representative regarding these issues. Any additional requests or inquiries should be directed at your representative, David Christianson." (Tr. 328).

On April 6, 2015, Plaintiff faxed a letter to ALJ Kunz in response to "an **untimely** (April 2, 2015) response from [Minneapolis ODAR]." (Tr. 329) (emphasis in original). Plaintiff again "want[ed] to verify CART services will be available." (Tr. 329). Plaintiff wrote that he

> personally re-scheduled the November 21, 2014 video Hearing date specifically so CART services would be available. I understand that David Christianson's office has also made this request. I believe that one of the primary reasons this issue has not been resolved long ago with the Bloomington SS[A] Office is my inability to verbally communicate with them.

(Tr. 329). Plaintiff also indicated that, "because of [his] mental processing issues," he would "need a copy of the Electronic CART file at the conclusion of the Hearing and, depending if any issues are un-resolved, may request at least 7 days to provide a written response." (Tr. 329). Plaintiff also asked "about getting access to [his] file." (Tr. 329).

Additionally, Plaintiff indicated he had previously "made all requests directly with SSA," but was now told to contact his representative, asserting "[t]his change would seem unfair . . ." (Tr. 329).

On April 7, 2015, Minneapolis ODAR was contacted by David Christianson regarding the hearing scheduled for April 8, 2015. (Tr. 330). Christianson "stated [Plaintiff] had sent him an e-mail this morning in which [Plaintiff] alleged the hearing had been cancelled per a telephone call to [Plaintiff] on April 6." (Tr. 330). Christianson was "[a]ssured . . . that the hearing had definitely not been cancelled. Nor had anyone from this office called [Plaintiff]." (Tr. 330). Christianson indicated he would contact Plaintiff "and inform him the hearing was scheduled for April 8, 2015 at 1:30pm and that if [Plaintiff] did not appear for the hearing the case could well be dismissed by the Administrative Law Judge." (Tr. 330).

On April 7, 2015, Plaintiff sent ALJ Kunz a letter thanking her for "re-scheduling tomorrow's hearing" because "this seems like the only reasonable option." (Tr. 332). Plaintiff indicated he was surprised he was "called about the cancellation" after being informed "all communication would go to David Christianson." (Tr. 332). Plaintiff indicated that Christianson informed him the night prior that "CART services had not been scheduled." (Tr. 332). Plaintiff indicated "[t]he reason that the Hearing was transferred from St. Louis was so CART services would be available. I have attached a

copy of that letter.[2] I had confirmed this with [Christianson's] office and I thought that his office had confirmed this with your office." (Tr. 332). Plaintiff stated "[i]t would not be realistic to have a Hearing on my disabilities when the appropriate ADA accommodations were not made for those disabilities. This is no different than providing a Spanish translator for someone who speaks Spanish and does not understand English." (Tr. 332). Plaintiff also wanted to "clarify that at the conclusion of the Hearing that [he] get a copy of the CART file and may request a few days to provide a written response." (Tr. 332). Plaintiff indicated that, because of his

> communication issues and mental processing issues [he has] found that people do not always understand [him] or that [he] did not understand someone else. The availab[ility] of CART services for this Hearing is an example, [Plaintiff] had understood that this accommodation had been made and did not learn until yesterday that CART had not yet been scheduled.

(Tr. 332).

On April 9, 2015, Christianson sent ALJ Kunz a letter requesting the use of CART services for the hearing that was to be scheduled at a later date. (Tr. 335). Christianson also requested permission to have a self-employed stenographic court reporter at the hearing. (Tr. 335).

On April 30, 2015, ALJ Kunz sent Christianson a letter, indicating she had received his letter "dated April 9, 2015 regarding CART services . . . . In your letter, you asked that [a self-employed CART reporter] provide CART services . . . ." (Tr. 198). ALJ

---

[2] The attached letter is a November 5, 2014 letter from Plaintiff to the SSA St. Louis Office, requesting (1) an in-person hearing and (2) arrangements for CART caption services as well as transcripts at the conclusion of the hearing. (Tr. 333).

Kunz noted "while a claimant cannot provide for his own CART services, in very limited situations the Social Security Administration can provide a real-time court reporter to aid a claimant during the hearing." (Tr. 198). "This hearing accommodation is reserved for claimants with medically documented hearing impairment that prevents the claimant from understanding speech at a normal conversational level, even with the use of a hearing aid." (Tr. 198). ALJ Kunz noted that the "evidence currently in the record does not establish that [Plaintiff] cannot understand speech at a normal conversational level." (Tr. 198). Thus, if Plaintiff wished to "request an accommodation based on [his] hearing impairment," he was to "submit a statement from a doctor verifying that [Plaintiff] is unable to understand speech at a normal conversational level, even with the use of hearing aids." (Tr. 198). Plaintiff was to "include the underlying medical evidence used to support the doctor's statement." (Tr. 198). In the alternative, Plaintiff "can choose to submit a written statement of his allegations in lieu of providing testimony at a hearing." (Tr. 198). If ALJ Kunz did "not receive a doctor's statement or a written statement of allegations from [Plaintiff] within 20 days of the date [Christianson] receive[d] this notice, [ALJ Kunz] will assume that [Plaintiff] does not wish to submit either. [ALJ Kunz] will then schedule [Plaintiff] for a new hearing." (Tr. 198).

On May 20, 2015, Plaintiff faxed a letter to ALJ Kunz, indicating the "documentation of my permanent hearing loss should be in the file." (Tr. 337).

On May 26, 2015, Minneapolis ODAR contacted Christianson, informing him of Plaintiff's May 20, 2015 letter and asking him to "attempt to obtain a doctor's statement as requested . . . regarding [Plaintiff's] alleged hearing impairment." (Tr. 338).

Christianson was informed that if Minneapolis ODAR "do[es] not receive this information, the hearing would be scheduled as a regular hearing and [Plaintiff] would be expected to appear and participate in the hearing." (Tr. 338). Christianson was also reminded that Minneapolis ODAR "would not be responding directly to [Plaintiff] but instead be doing all communication through the representative." (Tr. 338).

On July 1, 2015, Plaintiff was sent a Notice of Hearing, scheduling a hearing for September 10, 2015. (Tr. 199–217). The Notice of Hearing indicated that "**It Is Important That You Attend Your Hearing**." (Tr. 199, 205) (emphasis in original). It continued: "If you do not attend the hearing and [ALJ Kunz] do[es] not find that you have a good reason, [ALJ Kunz] may **dismiss** your request for hearing. [ALJ Kunz] may do so without giving you further notice." (Tr. 199, 205) (emphasis in original).

On August 10, 2015, Plaintiff faxed ALJ Kunz a letter indicating he "received a notice of planning to schedule a hearing on September 10, 205." (Tr. 341). Plaintiff continues, stating the "notice does not respond to the issues that I had stated in my previous letters to you. It seems that these issues need to be addressed before a hearing can be scheduled." (Tr. 341). Plaintiff "want[ed] to verify CART services will be available," noting he "can schedule for a CART reporter to be there is [sic] you want me to do so." (Tr. 341). Plaintiff continued: "I understand that there was an un-answered question as to if the CART Reporter would be arranged by me or by the SSA?" (Tr. 341). Plaintiff indicated that, because of his "mental processing issues, [he] will need a copy of the Electronic CART file at the conclusion of the Hearing and, depending if any issues

are un-resolved, may request at least 7 days to provide a written response." (Tr. 341).
Second, Plaintiff requested a copy of his file. (Tr. 341).

On August 24, 2015, Plaintiff sent a letter to Minneapolis ODAR, informing that
"Christianson no longer represents me in any matters with Social Security, specifically
with any RSDI or SSI claims." (Tr. 49).

On August 27, 2015, Plaintiff was sent a Notice of Hearing–Important Reminder,
reminding him the September 10, 2015 hearing. (Tr. 219–23). Again, Plaintiff was
reminded as follows:

> If you do not appear at this hearing, and do not provide a good reason why
> you did not appear, the administrative law judge . . . will **dismiss** your
> request for hearing without further notice. If the ALJ dismisses your request
> for hearing, the prior decision will become the final decision of the
> Commission on your application.

(Tr. 219, 221) (emphasis in original).

On August 31, 2015, Plaintiff sent another fax to ALJ Kunz, indicating he had
"not yet received a response to [his] August 10, 2015 letter." (Tr. 343). Plaintiff asked
"that [ALJ Kunz] do not schedule any hearings until the issues in that letter are
addressed." (Tr. 343). Plaintiff also indicated: "Please note, David Christianson does not
represent me." (Tr. 343). Plaintiff requested a copy of his file. (Tr. 343). Plaintiff also
asked: "[A]m I able to schedule the CART Reporter?" (Tr. 343). Plaintiff also submitted
an Acknowledgement of Receipt (Notice of Hearing) form, indicating he "cannot be
present at the time and place shown on the Notice of Hearing" because he "still ha[d] not
received answers to [his] questions." (Tr. 344, 47).

On September 2, 2015, Minneapolis ODAR contacted Christianson "regarding the most recent letter from [Plaintiff]. Noted that [Plaintiff] states that Mr. Christianson does not represent [Plaintiff] but that per earlier conversations with the representative, he is still on this case." (Tr. 346). Christianson was told "that as [Plaintiff] is aware of the time and place of the hearing [Plaintiff] is expected to show up and participate in the hearing. If [Plaintiff] chooses not to do this, the Administrative Law Judge will still conduct a hearing as [Plaintiff] will then have waived his right to appear at a hearing." (Tr. 346).

That same day, Christianson called back Minneapolis ODAR to "confirm that he is no longer going to represent [Plaintiff]" due to Plaintiff's "repeated letters to [Minneapolis ODAR] indicating that he is not represented by Mr. Christianson." (Tr. 347). Christianson indicated he "had repeatedly discussed with [Plaintiff] the consequences of not appearing for his hearing." (Tr. 347).

In a letter dated September 1, 2015, but received by Minneapolis ODAR on September 2, 2015, Christianson withdrew as Plaintiff's representative on this case. (Tr. 226, 35).

On September 2, 2015, Plaintiff was mailed a form letter indicating his file was ready for review, attaching a CD that contained all of the evidence of his electronic file to date. (Tr. 351–62). The form letter indicates it is a claimant's responsibility to provide medical evidence showing he has an impairment and the severity of that impairment. (Tr. 351). The letter continues, noting that as soon as medical evidence is submitted, the claim will be reviewed "to determine if we can make a fully favorable decision without holding a hearing. If we cannot make a decision on the record, we will notify you when

your hearing is scheduled. Therefore, it is to your advantage to submit your evidence as soon as possible." (Tr. 352).

On September 10, 2015, ALJ Kunz issued an Order of Dismissal. (Tr. 42–46). ALJ Kunz noted that

> [a]n Administrative Law Judge may dismiss a request for hearing if neither the claimant nor the person designated to act as the claimant's representative appears at the time and place set for the hearing; if the claimant has been notified before the time set for the hearing that his request for hearing may be dismissed without further notice if he did not appear at the time and place of hearing; and if good cause has not been found by the Administrative Law Judge for the claimant's failure to appear. (20 CFR 404.957(b)(1)(i)).

(Tr. 45). ALJ Kunz found that a "Notice of Hearing was mailed to [Plaintiff] on June 30, 2015 at his last known address advising him of the time and place of hearing." (Tr. 45). The Notice of Hearing contained information as to the procedures for requesting a change in the time and place of the hearing, as well as "a reminder that failed to appear at his scheduled hearing without good cause could result in dismissal of the claimant's request for hearing." (Tr. 45). ALJ Kunz noted that Plaintiff "initially requested accommodations at the hearing in the form of CART services that he would provide." (Tr. 45). Plaintiff "was notified, through his attorney at the time, that while private CAR[T] services could not be used, the agency would provide them with evidence of an inability to understand speech at a normal level, even with the use of aids." (Tr. 45). ALJ Kunz found "[n]o such evidence was provided." (Tr. 45). Plaintiff "continued to object to a hearing without CART services. Because he had an attorney of record, all communication on this issue was conducted with his attorney." (Tr. 45). Plaintiff's attorney "subsequently withdrew

from the case but indicated he had repeatedly discussed with [Plaintiff] the consequences of not appearing for the hearing." (Tr. 45). Plaintiff "did not return the Acknowledgment of Receipt (Notice of Hearing) form. Accordingly, an attempt was made to contact [Plaintiff] as required by 20 CFR 404.938" by send a Notice of Hearing-Important Reminder on August 27, 2015. (Tr. 46). Plaintiff did not appear at the hearing. (Tr. 46). Therefore, ALJ Kunz "considered the factors set forth in 20 CFR 404.957(b)(2) and [found] that there is no good cause for [Plaintiff's] failure to appear at the time and place of hearing." (Tr. 46). ALJ Kunz then dismissed Plaintiff's request for hearing dated December 10, 2013, leaving the May 4, 2012 determination in effect. (Tr. 46).

On September 18, 2015, Plaintiff called Minneapolis ODAR "wanting to speak about the dismissal letter he received dated Sept 10, 2015." (Tr. 365). Plaintiff "referred to a letter he had received on Sept 2, which he claims indicated his hearing would be rescheduled." (Tr. 365). Plaintiff argued that language in that letter "'clearly' gave him the opportunity to submit additional evidence before a hearing was scheduled and he interpreted this as stating his hearing on Sept 10 would not happen and he would get a new hearing scheduled." (Tr. 365). Plaintiff "claim[ed] that this letter was sent to him in response to his August 31, 2015 letter . . . in which he asks that a hearing not be scheduled until his concerns were addressed." (Tr. 365). Minneapolis ODAR "tried to explain that [Plaintiff's] concerns were addressed, but he repeatedly claimed that he did not have the mental capacity to understand the letters sent and complained that he did not receive responses to many of his letters." (Tr. 365). Minneapolis ODAR

> explained that because [Plaintiff] had a representative, communication
> would have been through his representative. However, while trying to
> explain this, he cut me off stating that he could not hold this conversation
> over the phone because he couldn't read and comprehend fast enough (he
> state[d] he was using adaptive phone equipment that allowed him to read all
> of my spoken words) to have the conversation.

(Tr. 365). Minneapolis ODAR "tried to explain to [Plaintiff] that [the] letter from Judge Kunz, dated April 30, 2015 specifically instructed him to provide medical evidence in order to obtain special hearing services." (Tr. 365). Plaintiff "argued that because he did not have a copy of his file he could not tell what was already in the file." (Tr. 365). After Plaintiff "cut [Minneapolis ODAR] off multiple times while [it] tried to explain things to [Plaintiff], [Minneapolis ODAR] finally just gave up and said simply that [Plaintiff's] options were to request that the judge reconsider the dismissal or for him to file an appeal." (Tr. 365). Plaintiff responded that "he did not know how to file an appeal, that he did not have the mental capacity to do so." (Tr. 365). Minneapolis ODAR "suggested [Plaintiff] talk to a representative. [Plaintiff] said that did not work for him." (Tr. 365). Plaintiff said "he would send a letter to Judge Kunz. [Minneapolis ODAR] stated that filing an appeal only required he send a letter to the Appeals Council address." (Tr. 365). Plaintiff "again claimed he could not understand what he needed to do." (Tr. 365). Minneapolis ODAR indicated it "would consider the conversation a request to vacate the dismissal and refer it to the Judge for review" and that Plaintiff would "receive a response from the Judge." (Tr. 365). Plaintiff "was displeased with this because he claimed that communication seemed to already be a problem and that waiting for a response from the judge would delay his ability to appeal." (Tr. 365). Plaintiff was

informed that "he could file an appeal at any time that he did not need to wait for a response from the Judge." (Tr. 365). Plaintiff indicated he "would talk to his family because he continued to claim he did not understand the appeal process." (Tr. 365).

On September 21, 2015, Plaintiff faxed a letter to Minneapolis ODAR. (Tr. 370–75, 32–34). Plaintiff's letter indicated he faxed and mailed a letter to ALJ Kunz on August 31, 2015. (Tr. 370, 32). Plaintiff stated Minneapolis ODAR "responded to this letter on September 2, 2015," providing a CD containing a copy of his file "as . . . requested in [his] letter." (Tr. 370, 32). Plaintiff continued, stating the September 2, 2015 letter "addressed [his] question that [he] had asked in [his] August 10, 2015 letter" requesting clarification of a statement regarding "submit written statements of [Plaintiff's] allegation in lieu of providing testimony at a hearing." (Tr. 370, 32). Plaintiff continued that "[b]ecause of [his] hearing disability and [his] mental processing issues" it "seems like a logical way to resolve [his] appeal" in that the letter asked that he "submit documents." (Tr. 370, 32). Plaintiff also posed questions regarding why Minneapolis ODAR had contact with his representative on September 2, 2015 when he withdrew on September 1, 2015. (Tr. 370–71, 32–33). Plaintiff then discusses "several serious issues" with the September 10, 2015 Order of Dismissal. (Tr. 371–72, 33–34). First, Plaintiff challenged that he was not notified of the hearing date, asserting Minneapolis ODAR "was apparently notifying the wrong party of the Hearing schedule . . . and did not make any attempt to notify even after [it] verified Mr. Christianson was not involved and after [it] read my letter stating [Plaintiff] cannot attend." (Tr. 371, 33). Plaintiff continued, indicating ALJ Kunz was not notified of Minneapolis ODAR's September 2, 2015 letter

where it stated he "would be notified if a Hearing was even necessary." (Tr. 371, 33). Second, Plaintiff challenged ALJ Kunz's reference to Christianson's representations that he had informed Plaintiff of the consequences for not appearing at the hearing as "inappropriate gossip of [Minneapolis ODAR]." (Tr. 372, 34). Third, Plaintiff challenged the finding that he did not return an Acknowledgment of Receipt (Hearing Notice), asserting he sent one with his August 30, 2015 letter. (Tr. 372, 34).

Later that same day, Plaintiff called Minneapolis ODAR asking if it had seen a letter he had sent. (Tr. 368). Plaintiff "was wondering why the letter that was sent to him on the 2nd of September was contradicting the dismissal that was sent." (Tr. 368). Plaintiff was informed the letter sent on September 2 was a form letter, with Plaintiff responding "he was not aware of that fact as the letter did not have the word form printed on it." (Tr. 368). Plaintiff asked if Minneapolis ODAR spoke to his former representative on September 2, with Minneapolis ODAR "affirm[ing] that [it] had spoken to Mr. Christianson and that he had indicated [Plaintiff] was fully aware of what would happen if he did not appear for the hearing." (Tr. 368). Plaintiff "said this was not necessarily true as he had not spoken to his representative in months." (Tr. 368).

Again, later that day, Plaintiff called Minneapolis ODAR, "stating that he wanted a letter sent to him responding to the fax he sent . . . ." (Tr. 367). Minneapolis ODAR indicated it would "not be doing that, and that the case was dismissed from our office and that the only thing to do if he did not agree would be to write the appeals council." (Tr. 367). Minneapolis ODAR indicated that instructions for appeal were found with the dismissal. (Tr. 367). Plaintiff "said he did not have the mental or physical capacity to do

that," with Minneapolis ODAR indicating Plaintiff had "just wrote . . . a letter explaining why the dismissal was incorrect in his opinion, which is all he would have to do to appeal the dismissal." (Tr. 367). Plaintiff "said thank you and hung up." (Tr. 367).

After the telephone calls on September 21, 2015, Plaintiff faxed a letter to ALJ Kunz requesting that she reconsider the Order of Dismissal. (Tr. 377, 31). Plaintiff argued there "appears to be internal office issues and different individuals in your office were apparently taking contrary actions on [his] appeal at the same time." (Tr. 377, 31). Plaintiff raised the same issues as in his letter to Minneapolis ODAR, indicating: (1) he was instructed he "would be notified when a new Hearing would be schedule[d], if necessary!"; (2) Minneapolis ODAR spoke to Christianson, but not Plaintiff, "about whether or not it was understood that Hearing may still be scheduled"; (3) Minneapolis ODAR was "taking different courses of action"; and (4) that Plaintiff had returned an Acknowledgment of Receipt (Hearing Notice). (Tr. 377, 31).

On October 2, 2015, ALJ Kunz considered Plaintiff's request to vacate the Order of Dismissal, (Tr. 28–30), finding Plaintiff had not "established a good cause reason to vacate the dismissal order." (Tr. 29). ALJ Kunz informed Plaintiff:

> You were scheduled for a hearing on September 10, 2015, which you failed to attend. You were notified of the scheduled date, time, and place of this hearing in a Notice of Hearing letter, dated July 1, 2015, and again in a Notice of Hearing-Important Reminder letter dated August 27, 2015. You even acknowledged receipt of these letters by returning the Acknowledgment of Receipt (Notice of Hearing) form, which you signed on August 31, 2015. Your statement that you could not attend the hearing because you "[had] not received answers to [your] questions" (regarding the availability of CART services and access to your medical file) did not entitle you to a postponement of your September 10, 2015 hearing. In fact, you had already received two prior postponements of scheduled hearings to

resolve these issues. Further, in April 2015, you received notice, through your representative, that CART services would not be provided without "a statement from a doctor verifying that the claimant is unable to understand speech at a normal conversational level, even with the use of hearing aids." You did not provide such evidence. Finally, you, through your representative, had access to your medical file, so additional access was not necessary.

(Tr. 29). Following review of Plaintiff's September 21 letters, ALJ Kunz did "not find good cause to vacate the dismissal order." (Tr. 29). ALJ Kunz noted her refusal to vacate the dismissal order was not reviewable by the Appeals Council, and informed Plaintiff how to file an appeal of the Order of Dismissal. (Tr. 29–30).

On October 15, 2015, Plaintiff faxed a letter to ALJ Kunz entitled "REQUEST To Re-consider ORDER FOR DISMISSAL." (Tr. 8–27). Plaintiff indicated he does "not mentally process information in 'real-time' so [he has] to go back and review each communication and document trying to sort out what it means." (Tr. 8). Plaintiff then raised various issues. Plaintiff indicated his case "is for the wrong time period" where the medical documents are from "9/15/09 to 12/31/10" but "[m]uch of the records of [his] disability do not begin until mid 2011." (Tr. 8). Plaintiff asserted ALJ Kunz's October 2, 2015 letter "does not address" the September 2, 2015 letter that was a "direct response" to his August 31, 2015 letter. (Tr. 8). Plaintiff wrote that the Order of Dismissal states he did not return the Acknowledgment of Receipt (Notice of Hearing), but ALJ Kunz's October 2, 2015 letter indicates he had returned it. (Tr. 8–9). Plaintiff asserted that withdrawal of representation without sufficient notice established good cause because his representative withdrew "about one week prior to the Scheduled Hearing." (Tr. 9). Plaintiff asserted that "[a]ny comments made to [Christianson] after he withdrew . . . are

inappropriate and unsubstantiated and should be striken [sic] from the Order." (Tr. 9).
Plaintiff requested that the Order of Dismissal be vacated or revised. (Tr. 9).

On October 26, 2015, ALJ Kunz responded to Plaintiff's October 15, 2015 request for reconsideration. (Tr. 6–7). ALJ Kunz found Plaintiff had not "established a good cause reason to vacate the dismissal order." (Tr. 6). ALJ Kunz indicated:

> The issue for consideration is whether you had good cause for not appearing at your hearing. You were scheduled for a hearing on September 10, 2015, which you failed to attend. Your argument that the "case sent to ODAR is for the wrong time period" does not establish good cause for not appearing at your September 10, 2015 hearing. Your argument that letters dated April 4 and April 11, 2012 were not in your file does not establish good cause for not appearing at your September 10, 2015 hearing. Your argument regarding the "Acknowledgment of Receipt (Notice of Hearing)" acted as a request to postpone your September 10, 2015 hearing, contact with your representative in September 2014 [sic] (prior to your representative's withdrawal) acted as a denial of that request and confirmed that you would be expected to attend your September 10, 2015 hearing.
>
> Regarding access to your medical evidence, not only did you have access through your representative, but you also received a disc containing your medical evidence prior to your September 10, 2015 hearing; therefore, any arguments you have made regarding access to your medical evidence does not establish good cause as to why you did not attend your September 10, 2015 hearing.
>
> You have referenced the "September 2, 2015 letter from Caroline Thompson" as support for your request to reconsider the dismissal; however, I am not persuaded by your argument that this letter was your reason for not attending your hearing. On review of the evidence, I note that this letter was not sent in "direct response to [your] August 31st letter", but was generated automatically when an evidence CD was mailed to you. As noted previously, you have been scheduled for hearing on two previous occasions and granted postponement twice. This office was in frequent communication with you and your previous representative regarding the date, time, and place of your third scheduled hearing, as well as the importance of your attendance at that hearing.

You now argue that withdrawal of representation can establish good cause for granting a postponement. While this may be true in some cases, I note that in your case you did not contact our office after your representative withdrew to request postponement of your hearing to obtain new representation. You have engaged in several phone calls with our office and written several letters to our office since you received your Notice of Dismissal, but none of those conversations or letters indicated your desire to obtain a new representative. Therefore, your representative's withdrawal does not establish good cause as to why you did not attend your hearing. . . .

After a review of all of the evidence, I do not find good cause to vacate the dismissal order. . . .

(Tr. 6).

On November 10, 2015, Plaintiff submitted a request for review to the Appeals Council. (Tr. 5). Plaintiff indicated he did "not agree with the determination and the reasons are inconsistent with the records in the file." (Tr. 5). On February 5, 2016, the Appeals Council denied Plaintiff's request for review, finding no reason under its rules to review ALJ Kunz's dismissal. (Tr. 3).

## III.    ANALYSIS

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). "Sovereign immunity is jurisdictional in nature." *Id.* Because federal courts are courts of limited jurisdiction, the 'threshold requirement in every federal case is jurisdiction.'" *Bradley v. Am. Postal Workers Union, AFL-CIO*, 962 F.2d 800, 802 n.3 (8th Cir. 1992) (quoting *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)); *Fed. Deposit Ins. Corp.*, 510 U.S. at 475.

Under 42 U.S.C. § 405(g):

> Any individual, after **any final decision of the Commissioner of Social Security made after a hearing to which he was a party**, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

(emphasis added). Moreover, "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided [under this subchapter]." 42 U.S.C. § 405(h); *Sheehan v. Sec'y of Health, Ed. & Welfare*, 593 F.2d 323, 325 (8th Cir. 1979) ("[T]he Supreme Court specifically held that § 405(h) prevents review of the Secretary's decisions except as provided in § 405(g) of the Act.") (citing *Weinerger v. Salfi*, 422 U.S, 749 (1975)). "Thus, 42 U.S.C. § 405(g) provides the exclusive method of judicial review of an administrative decision, and a 'final decision of the [Commissioner] made after a hearing' is a prerequisite for judicial review of the ALJ's decision." *Slycord v. Chater*, 921 F.Supp. 631, 638 (N.D. Iowa 1996) (citing *Califano v. Sanders*, 430 U.S. 99, 106–07 (1977), and *Mathews v. Eldridge*, 424 U.S. 319, 327 (1976)).

In *Mathews*, the Supreme Court explained that the final decision requirement consists of two elements,

> only one of which is purely "jurisdictional" in the sense that is cannot be "waived" by the [Commissioner] in a particular case. The waivable element is the requirement that administrative remedies prescribed by the [Commissioner] be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the [Commissioner]."

424 U.S. at 328; *Schoolcraft v. Sullivan*, 971 F.2d 81, 84–85 (8th Cir. 1992) ("In order for the district court to have subject matter jurisdiction under section 405(g), a claimant must have presented a claim for benefits to the Secretary and exhausted the administrative remedies prescribed by the Secretary."). The Social Security regulations set forth the process of administrative review and explain a claimant's right to judicial review after he has taken all of the necessary administrative steps. *See* 20 C.F.R. § 404.900(a). The administrative review process consists of several steps, which usually must be requested within certain time periods and in the following order: (1) initial determination; (2) reconsideration; (3) hearing before an ALJ; and (4) Appeals Council review. *See id*. When a claimant has completed the steps of the administrative review process, SSA will have made its final decision subject to judicial review in district court. *See* 20 C.F.R. § 409.900(a)(5).

Here, ALJ Kunz's Order of Dismissal is not a "final decision" subject to review. *Lyons v. Astrue*, 2013 WL 64648, at *3 (E.D. Mo. Jan. 24, 2013) ("[B]ecause . . . Administrative Law Judge issued an Order of Dismissal of [claimant's] request and the Appeals Council denied the claimant's request for review of the Order of Dismissal, the court does not have subject matter jurisdiction over this case."); *Summers v. Astrue*, 2010 WL 3522454, at *3 (W.D. Ark. Sept. 1, 2010) ("The ALJ's dismissal of Plaintiff's hearing request is not a 'final decision' subject to judicial review."); *Wild v. Astrue*, 2008 WL 698483, at *3 (D. Minn. Mar. 13, 2008) ("The ALJ's dismissal of plaintiff's hearing request is not a 'final decision' subject to judicial review."); *Slycord*, 921 F.Supp. at 641 (holding that an "ALJ's denial of a request to reopen a claim is not a

'final decision' of the Commissioner pursuant to 42 U.S.C. § 405(g), unless a claimant can show that in denying the claimant's request, the ALJ reopened the case on its merits"); *Boock v. Shalala*, 48 F.3d 348, 351 (8th Cir. 1995) ("[T]he Secretary's determination of no good cause to extend the period for appeal . . . is not subject to judicial review under § 405(g)"); *Smith v. Heckler*, 761 F.2d 516, 519 (8th Cir. 1985) (Appeals Council's dismissal of plaintiff's untimely request for review was not a final action for purposes of review under section 205(g)). Rather, Plaintiff effectively never went past Step 3, the hearing before an administrative law judge, *see* 20 C.F.R. § 404.900(a)(3), because no hearing was ever held in Plaintiff's case. As a result, Plaintiff did not complete the administrative review process.[3] Therefore, this Court "lack[s] jurisdiction to review the ALJ's decision because [Plaintiff's] hearing request was dismissed after he failed to appear, and thus no hearing was ever held." *Haynes v. Apfel*, 205 F.3d 1346, at *1 (table) (8th Cir. 2000) (per curiam); *see also Hilmes v. Sec'y of Health and Human Servs.*, 983 F.2d 67, 69–70 (6th Cir. 1993); *Cole v. Sec'y of Health, Ed. and Welfare*, 369 F.Supp. 127, 129 (W.D. La. 1973) ("Accordingly, since plaintiff's request for a hearing was dismissed, there is no judicially reviewable final decision after a hearing as required by 42 U.S.C. 405(g).").

---

[3] Plaintiff's argument that he waived his appearance at a hearing, thereby requiring the ALJ to make a decision on the merits, is unsupported by the record wherein Plaintiff requested on several occasions that the in-person hearing be postponed so CART services could be provided to facilitate his personal attendance at the hearing. *See* 20 C.F.R. § 404.948(b)(1) (permitting an ALJ to decide a case on the record without a hearing if claimant indicates in writing that he does not wish to attend); *see also* 20 C.F.R. § 404.957(b)(1)(i) (providing an ALJ may dismiss a request for hearing if claimant does not appear at the time and place set for the hearing).

## IV.    RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 9), be **DENIED**, Defendant's Motion for Summary Judgment, (ECF No. 12), be **GRANTED**, and this matter be **DISMISSED FOR LACK OF JURISDICTION**.

Date: June 19, 2017                                   _____*s/ Tony N. Leung*_____
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      District of Minnesota

                                                      *Kaeding v. Colvin*
                                                      Case No. 16-cv-889 (JRT/TNL)


### NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).